IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03720-PAB-NRN

IAN HAUMAN,

Plaintiff,

v.

HIGHLAND BRIDGE LOFTS HOMEOWNERS ASSOCIATION, INC.,

Defendant.

---

**RECOMMENDATION ON**
**DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION (ECF No. 2)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Highland Bridge Lofts Homeowners Association, Inc.'s Motion to Stay and Compel ADR ("Motion to Stay"), ECF No. 2, filed on November 18, 2025, which was the same date the case was removed from state court. The case was reassigned to Judge Philip A. Brimmer on December 8, 2025. A response to the Motion to Stay was filed by Plaintiff Ian Hauman ("Hauman") on December 16, 2025. ECF No. 24. A reply was filed on December 26, 2025. ECF No. 26. The Motion to Stay was referred to this Court for determination on January 15, 2026, ECF No. 32. The Court heard argument on March 4, 2026, ECF No. 36. Now, being fully informed and for the reasons discussed below, the Court recommends the matter be stayed and the Parties be compelled to mediation and, if necessary, arbitration.

## I. BACKGROUND[1]

This case involves claims by Hauman against his homeowners association. Hauman owns real property at 1555 Central Street, Unit 305 in Denver, Colorado. The property is part of a condominium project commonly known as the Highland Bridge Lofts. Hauman is a member of the Highland Bridge Lofts Homeowners Association, Inc. ("Defendant" or the "Association"). The Association is a common interest community association charged with the duty, objectives, and purposes to provide for the maintenance, preservation, and architectural control of the condominium units and common elements within the condominiums, and to promote the health, safety, and welfare of the residents there. *See* Amended Complaint, ECF No. 7 at 1–2.

Hauman's dispute with the Association arises from a number of issues. First, Hauman says that the Association failed to maintain and replace portions of a balcony that caused moisture intrusion into his unit, causing thousands of dollars in direct and indirect damages, including costs for temporary housing, moving, and storage. *Id.* ¶ 9. When Hauman demanded "accountability" from the Association for the interior water damage, the Association allegedly reported Hauman to Denver police, falsely saying that he had threatened other residents or Association members. *Id.* Then, the Association installed a single surveillance camera in the interior hallway accessing Hauman's unit, allegedly for the purpose of illegally monitoring Hauman, including activity inside his unit. *Id.*

[1] Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Hauman further alleges that the Association placed a stop-mail order on his mailing address to ensure he would not receive notice of rule changes and to ensure he could not challenge rule changes or the levying of fines. The Association also levied seventeen fines charging an arbitrary amount of $1,000.00 for alleged violation of vague regulations, and then tried to automatically withdraw $17,000 in funds from Hauman's bank account without consent. *Id.* The fines were for allegedly "tampering" with security equipment after Hauman had taped paper over the offending security camera. The Association also made false threats of foreclosing on Hauman's unit while knowing the fines were invalid and not the basis for a foreclosure. *Id.*

Hauman says he has an autism disability and has made multiple accommodation requests, such as asking to participate in monthly and annual Association meetings by proxy and asking for removal of hallway cameras due to his sensitivity to sensory stress. The Association allegedly has refused all requested accommodations and refused to engage in the interactive process to explore whether Hauman's disability could be accommodated so that he may effectively participate in the workings of the Association. *Id.*

The Amended Complaint asserts multiple claims for relief, including Breach of Contract, Negligence, Violations of the Colorado Common Interest Ownership Act ("CCIOA"), Breach of Fiduciary Duty, Continuing Trespass, Abuse of Process, Civil Conspiracy, Invasion of Privacy, Outrageous Conduct, and violations of the Federal Fair Housing Act and the Colorado Anti-Discrimination Act.

The unit owned by Hauman is subject to a declaration that runs as a covenant with the property (the "Declaration"). As relevant to the instant motion, Article 20 of the

Declaration provides for "Mandatory Dispute Resolution" for certain disputes that are defined as "Claims" under Section 20.3. Section 20.16 states,

> This article 20 and the obligations to arbitrate shall be specifically enforceable under the applicable arbitration laws of the State of Colorado. The arbitration award shall be final and binding, and judgment may be entered upon it in any court of competent jurisdiction in the County to the fullest extent permitted under the laws of the State of Colorado.

Also relevant to the instant motion, there was a prior lawsuit filed by Hauman against the Association. On August 2, 2024, Hauman filed an action under simplified civil procedure against the Association in Denver County Court. He raised claims regarding "personal property damage due to negligence," "violating Americans with Disabilities Act," and "misuse of funds." ECF No. 24-2 at 2. In Denver County Court, the Association first filed an answer, and then, on December 3, 2024, moved to dismiss based on the mandatory arbitration provision in the Declaration. *See id.* at 7–15. On December 9, 2024, the Denver County Court granted the motion to dismiss based on the arbitration provision. *Id.* at 17.

Hauman insists that following dismissal of the lawsuit due to the alternative dispute resolution ("ADR")/arbitration provision, the Association "continued to refuse to participate in mediation and arbitration even though it had been requested repeatedly by Hauman for more than a year and the Court ordered arbitration." ECF No. 24 at 9. "To this day," says Hauman, the Association "has still refused to participate in arbitration or mediation concerning this matter." *Id.* In Hauman's view, the Association "treats its obligations under the declarations as discretionary, yet consistently [seeks to] punish [Hauman] for seeking to enforce his rights." *Id.*

**a. The Association's Motion to Stay**

The Association has moved to stay and compel ADR/arbitration based on the language of the Association's Declaration. ECF No. 2 at 1. In the Association's view, Article 20 of the Declaration is binding contract that mandates a multistep ADR process as the "sole and exclusive remedy" for all "Claims." Per the Association, this process requires written notice, good-faith negotiations, mediation, and finally, binding arbitration. *Id*. at 2. Therefore, the Association contends that this case must be stayed because Hauman ignored his contractual obligations by filing this action "without initiating any part of the required ADR process." *Id.*

Because the action is now in federal court, the Association argues that the Federal Arbitration Act ("FAA") governs. Section 3 of the FAA mandates that when a dispute is subject to arbitration, based on "an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration had been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. As relevant here, the definition of a "Claim" in the Article 20 of the Declaration is very broad, covering "all claims, disputes and other controversies arising out of or relating to . . . (iv) The interpretation, application or enforcement of this Declaration; (vii) Any rights, obligations and duties of any Party under this Declaration; [and] (viii) Any personal injury or property damage that any Owner alleges to have sustained on the Property." ECF No. 2-1 at 52–53.

In seeking to stay this matter and compel arbitration, the Association asserts that "[h]ad plaintiff followed the ADR requirements, even if Highland Bridge failed to

participate, he would have an arbitration award. Because he did not proceed to arbitration, nor follow any of the initial required steps, this action must be stayed pending completion of the ADR process." ECF No. 2 at 2.

**b. Hauman's Response to the Motion to Stay**

In his opposition to the Motion to Stay, Hauman makes three arguments. First, Hauman argues that the Association itself has failed itself to participate in mediation or arbitration, even after successfully getting the Denver County Court case dismissed on that basis. Hauman claims that "[f]ollowing dismissal of the lawsuit, the [Association] continued to refuse to participate in mediation and arbitration even though it had been requested repeatedly by [Hauman] for more than a year and the Court ordered arbitration. To this day, the [Association] has still refused to participate in arbitration or mediation concerning this matter." ECF No. 24 at 9. Thus, the Association should be "estopped form attempting to compel arbitration after it had repeatedly failed to comply with its own arbitration demands, prior court orders, and [Hauman]'s repeated arbitration demand." *Id.* at 19.

Second, Hauman argues that the Association's retaliatory actions alleged in the Amended Complaint are not "governance actions" under any reasonable interpretation of the Declaration, and Hauman's challenge to these retaliatory actions are therefore not "Claims" within the definition of the Declaration. *Id.* at 11–12.

Third, Hauman argues that state law, not the FAA, governs here and the mandatory arbitration provisions of the FAA do not apply to cases brought under the CCIOA.

## II. ANALYSIS

The decision whether to enforce an arbitration agreement involves a two-step inquiry. First, the Court must determine whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000). The Court then must consider whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors Corp.*, 473 U.S. at 626; *Williams*, 203 F.3d at 764; *see also Morris v. Milgard Mfg, Inc.*, No. 12-cv-01623-REB-CBS, 2012 WL 6217387, at *1 (D. Colo. Dec. 13, 2012) (laying out test for whether to enforce an arbitration agreement). Next, there is the question of waiver or default. Even if there exists a valid and enforceable arbitration agreement, a party can waive or forfeit its right to demand or compel arbitration. *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016)

The Association insists that there is a written agreement to engage in alternative dispute resolution and, if necessary, arbitration. Article 20 of the Declaration requires taking certain formal steps to initiate alternative dispute resolution, which Hauman never did. The Court agrees with the Association on this point.

Section 20.2 of the Declaration provides that the Association and all owners "covenant[] and agree[] to submit all Claims each may have to the procedures set forth in this Article 20 and not to a court of law." ECF No. 2-1 at 52.

As relevant to this case, section 20.3 of the Declaration defines "Claims" to include

> all claims, disputes and other controversies arising out of or relating to the following: . . . ii) The Property (as defined in any such Purchase and Sale

> agreement) or the Condominium Unit . . . (iv) The interpretation, application or enforcement of this Declaration . . . (vii) Any rights, obligations and duties of any Party under this Declaration . . .(viii) Any personal injury or property damage that any Owner alleges to have sustained on the Property; . . . (x) Any breach of the foregoing.

*Id.*

Section 20.5 of the Declaration, titled "Notice of Claim," provides that any party alleging a Claim against the other party shall submit a "written notification,"

> stating plainly and concisely: (i) The nature of the Claim, including a list of any alleged construction defects, the Persons involved and the Respondent's role in the Claim; (ii) The legal or contractual basis of the Claim (i.e., the specific authority out of which the Claim arises); (iii) The date on which the Claim first arose; (iv) The name and address of every Person, including, without limitation, any current or former employees of Respondent, who claimant believes does or may have information relating to the Claim; and (v) The Specific relief and/or proposed remedy sought.

*Id.* at 54.

The Court agrees with the Association that the disputes recounted in the Amended Complaint constitute "Claims" under the Declaration. Hauman alleges that the Association failed to maintain and replace portions of the balcony, causing moisture intrusion into his unit. This is undeniably a "dispute" relating to "the Property" or the "Condominium Unit" and therefore qualifies as a "Claim." The alleged improper or retaliatory installation of a surveillance camera in the interior hallway accessing Hauman's unit is also a "dispute" relating to the "Property" or the "Unit." The failure to provide notice of changes to regulations relates to the application or enforcement of the Declaration and the rights, duties, and obligations of the parties under the Declaration. The alleged improper levying of $17,000 in fines also relates to the interpretation and enforcement of the Declaration. Even Hauman's claims under the Fair Housing Act and Colorado Anti-Discrimination Act arguably relate to aspects of the "Property" and his

"Unit": he claims that the installation of the security camera exacerbated his anxiety and that he should be granted accommodations to be able to participate in the Association's governance. Given the broad language of the Declaration defining a "Claim," the Court concludes that the causes of action alleged in the Amended Complaint are "Claims" covered by the Declaration—a written agreement to which Hauman agreed when he brought his condominium unit. Therefore, there exists a written agreement between the parties to arbitrate this dispute.

Second, Hauman's argument that Colorado law, not the FAA, applies to this case, and therefore militates against compelling arbitration, is not well taken. It is not clear how or why application of Colorado law, as opposed to the FAA, would change the outcome that this dispute should be mediated or arbitrated. While the enforceability of the Declaration may be subject to the CCIOA, as Hauman argues in his opposition, *see* ECF No. 24 at 16–17, it is not clear what this would mean to this case. It well may be, as Hauman asserts, that "declarations are not automatically enforceable and valid merely because they have been adopted by the [Association]." *Id.* But Hauman makes no persuasive argument that the ADR provision the Association seeks to enforce here is unenforceable or unconscionable under Colorado law.

Therefore, considering the two questions posed by *Mitsubishi Motors*, both answers favor issuance of a stay and compelling arbitration in this case. There is an agreement in writing to arbitrate disputes of the nature raised here, and there is no statute or policy that makes the claims non-arbitrable.

Hauman's final objection to submitting this dispute to arbitration is that the Association has itself failed to submit to arbitration and has therefore waived the

arbitration provision (or should be estopped from enforcing the arbitration provision). *See id.* at 19. Hauman argues that "the [Association] should be estopped from attempting compel arbitration after it has repeatedly failed to comply with its own arbitration demands, prior court orders, and [Hauman]'s repeated arbitration demand." *Id.* But the various documents and exhibits cited by Hauman in his opposition do not support the conclusion that the Association has waived or forfeited its arbitration rights.

It is true that the Association was successful in getting Hauman's Denver County Court complaint dismissed because he had failed to comply with the mandatory ADR process of the Declaration. *See* ECF No. 24-2 at 17 (Order of Dec. 9, 2024). But the Denver County Court decision did not *compel* arbitration. It merely dismissed the case because of the existence of the binding arbitration clause. *See id.* ("The Court finds there was a binding arbitration clause in relation to both Plaintiff and Defendant and thus grants the motion to dismiss."). Thus, it is not apparent that the Association failed to abide by any court order which *compelled* arbitration.

While Hauman insists that he then did try to mediate and abide by the terms of Section 20, the materials supplied in opposition to the motion do not include any document designated as a notice of claim, consistent with Section 20.5. And while there are many communications, allegations, and demands, the documents provided do not reflect what one could reasonably interpret as a meaningful effort at mediation or arbitration with the Association. While Hauman in certain parts of the correspondences does say that he is "filing for arbitration next week," *see* ECF No. 24-3 at 13 (email of May 3, 2025), there does not appear to have been any evidence of a successful effort to engage in the arbitration process. For example, at one point, it appears that Hauman

tried to schedule an arbitration by himself, without the assistance of counsel, with mediator Patricia Ayd. *See id.* at 42 (email of May 20, 2025). The mediator responded, “Ian, yes you can get the arbitration scheduled, but it requires the cooperation of the other party; the parties have to agree on the Arbitrator and the scheduling. I do not know all the facts, but it sounds like this may be a difficult process to do timely.” *Id.* Later the same day, the mediator wrote,

> Ian,
>
> After looking at the information you sent and your acknowledgement that the statute of limitations runs in June, given my schedule I do not believe that I am the Arbitrator for you. Given the various claims and the agreement language you sent I suggest you consult another attorney to at least get the arbitration scheduled timely. That is not something the Arbitrator can do.

*Id.* at 43 (email of May 20, 2025).

From this correspondence, two things are evident. First, Hauman recognized (based on the Denver County Court decision) that he needed to comply with the ADR provision of the Declaration. And second, that mediation or arbitration would not happen by itself. Hauman needed to communicate and coordinate with the Association to get an arbitration scheduled. There is no evidence that he attempted to do so, and no evidence that the Association forfeited or waived its right to compel arbitration.

The Court disagrees with the Association’s argument that, notwithstanding the Association’s refusal to participate in ADR, this case could still not go forward. *See* ECF No. 26 at 4 (“Even if we assumed it true [the Association] refused [to participate in ADR], that allegation does not permit abandonment of the process.”). Under the FAA, a court may only stay and compel arbitration so long as the applicant for the stay is “not in default in proceeding with such arbitration.” 9 U.S.C. § 3. If a party refuses to

meaningfully participate in arbitration, that party can be found in default and consequently lose the right to seek a stay of a lawsuit. *See Myers v. Papa Texas, LLC*, No. 25-2020, 2026 WL 394071, at *3 (10th Cir. Feb. 12, 2026) (finding that where the party seeking to compel arbitration had failed to pay arbitration fee, the party was in default of arbitration and the stay of federal court lawsuit was properly lifted). Similarly, a party can lose the right to compel arbitration via waiver—inaction or taking action inconsistent with the right to arbitrate. *See Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 467 (10th Cir. 1988) (listing factors to consider in assessing whether a party has waived the right to arbitration). That said, Hauman has presented no convincing evidence that the Association has either defaulted or waived its right to compel arbitration.

## III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Highland Bridge Lofts Homeowners Association, Inc.'s Motion to Stay and Compel ADR, ECF No. 2, be **GRANTED** as follows.

It is **RECOMMENDED** that this matter be **STAYED** pending Hauman and the Association's mediation and, if unsuccessful, arbitration of this dispute.

It is further **RECOMMENDED** that the parties be **COMPELLED** to mediate and, if unsuccessful, arbitrate this dispute. The Association is put on notice that a failure by the Association to participate in good faith in the mediation or arbitration process could be considered either a waiver or default of the right arbitrate and may lead to the lifting of the stay in this case.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 17th Day of July 2026

N. Reid Neureiter

N. Reid Neureiter
United States Magistrate Judge